980 F.2d 731
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ghanim HERMIS, Defendant-Appellant.
 No. 92-1844.
 United States Court of Appeals, Sixth Circuit.
 Dec. 9, 1992.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and ROSENN, Senior Circuit Judge.[1]
 PER CURIAM.
 
 
 1
 Having been found guilty of unauthorized acquisition and possession of food stamps, defendant Ghanim Hermis appeals his conviction on two grounds: improper pre-indictment delay, and misconduct by the prosecutor in closing argument to the jury. Concluding that reversal is not justified on either ground, we shall affirm the conviction.
 
 
 2
 * Defendant Hermis owned a convenience store through which he was authorized to participate in the food stamp program. Based on a criminal complaint alleging that he redeemed food stamps for cash (a violation of 7 U.S.C. § 2024(b)(1)) on February 6th and April 6th of 1990, Mr. Hermis was arrested on January 9, 1991. The prosecutor dismissed the complaint three weeks later.
 
 
 3
 On January 9, 1992--one year after his initial arrest--a federal grand jury indicted Mr. Hermis on charges stemming from the same transactions on which the original complaint had been based. A motion to dismiss the indictment for pre-indictment delay was denied, and the case went to trial before a jury. The jury returned a verdict of guilty on both counts of the indictment (a third count was dropped prior to trial), and Mr. Hermis was fined $5,000 and sentenced to six months in prison. This appeal followed.
 
 II
 
 4
 A. Pre-indictment Delay.
 
 
 5
 The first line of defense against excessive delay in bringing an indictment is the relevant statute of limitations. United States v. Lovasco, 431 U.S. 783, 789 (1977); United States v. Marion, 404 U.S. 307, 322, 324 (1971). The limitations period prescribed by the statute that applies here, 18 U.S.C. § 3282, is five years. Mr. Hermis was indicted less than two years after the first of his alleged offenses, so the statute gives him no comfort.
 
 
 6
 The Supreme Court recognized in Marion that pre-indictment delay may run afoul of the Due Process Clause even before the statute of limitations has run, see 404 U.S. at 325-26, but the Court declined to say "when and in what circumstances actual prejudice resulting from preaccusation delays requires dismissal of the prosecution." Id. at 324 (footnote omitted). In United States v. Lovasco, 431 U.S. 783 (1977), when the Court next addressed the issue of pre-indictment delay, its summary of Marion noted that "the Due Process Clause has a limited role to play in protecting against oppressive delay." Id. at 789. The touchstone, Lovasco said, is whether the delay "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.' " Id. at 790 (citations omitted). The Court was not in a position to be much more specific, because, as it noted,
 
 
 7
 "in the intervening years [since Marion ] so few defendants have established that they were prejudiced by delay that neither this Court nor any lower court has had a sustained opportunity to consider the constitutional significance of various reasons for delay." Lovasco, 431 U.S. at 796-97 (footnote omitted).
 
 
 8
 Lovasco and Marion teach that proof of actual prejudice is a necessary part of a due process claim, but that prejudice alone is not enough; the reasons for the delay must be considered too. Lovasco, 431 U.S. at 789. This court has said that pre-indictment delay is fatal to the government's case only when the defendant shows (1) "substantial prejudice to his right to a fair trial" and (2) "that the delay was an intentional device by the government to gain a tactical advantage." United States v. Duncan, 763 F.2d 220, 222 (6th Cir.1985); see also United States v. Talbot, 825 F.2d 991, 998 (6th Cir.1987), cert. denied, 484 U.S. 1042 (1988); United States v. Greene, 737 F.2d 572, 574-75 (6th Cir.1984). "Both parts of the test must be met before a defendant is entitled to have the indictment dismissed." Duncan, 763 F.2d at 222 (emphasis in original).
 
 
 9
 In the case at bar the district court concluded that Mr. Hermis failed to meet either part of the test; he did not demonstrate sufficient prejudice to cross the threshold of substantiality and he did not show an intentional attempt by the government to gain an advantage. We agree.
 
 
 10
 Mr. Hermis claimed prejudice caused by "failing memories, because [he] did not keep records of what store he was in on what particular days, and had the case come earlier, his memory would have been better and he could have been better defended." But the arrest in January of 1991 put Mr. Hermis on notice that his whereabouts and activities on the preceding February 6th and April 6th were important. The indictment that was handed up in January of 1992 did not come out of the blue, as far as Mr. Hermis was concerned--and even if it had, we would be hard put to say that an indictment brought within the first half of the limitations period prescribed by Congress somehow violated the defendant's rights under the Constitution.
 
 
 11
 Even if Mr. Hermis were somehow able to establish that he suffered substantial prejudice, he could not prevail here without demonstrating that the pre-indictment delay was "an intentional device by the government to gain a tactical advantage." United States v. Duncan, 763 F.2d 220, 222 (6th Cir.1985). In this connection Mr. Hermis quotes the following passage from the argument that the prosecution made to the jury after the closing argument by the defense:
 
 
 12
 "Again, the argument that was presented to you is, in large part, the United States got the wrong guy. It is the oldest defense trick in the book. A lot of time has passed. The agents got the wrong guy. Yes, they may not have lied wilfully but certainly under the immense pressure they are under may have erroneously perjured themselves. Well, ladies and gentlemen, it didn't happen. The defense had every opportunity to prove on the stand that those men were lying, and it didn't occur." (Emphasis supplied.)
 
 
 13
 The prosecutor was not trying to use the pre-indictment delay to the government's advantage here; he was simply summarizing what Mr. Hermis' lawyer had said. The defense had cited the delay in arguing that the government agents got the wrong man, and the prosecutor was merely arguing that the testimony of the agents had not been discredited. This hardly shows that the indictment had been purposely delayed to give the government an edge.
 
 
 14
 B. Prosecutorial Misconduct.
 
 
 15
 Mr. Hermis contends that reversal is mandated because in the course of closing arguments the prosecutor asked the jury to '[s]end a message to people that this type of fraud in poverty-stricken communities is not going to be tolerated." No objection was made at the time, so we may not order a new trial unless we conclude that the prosecutor's words constituted "[p]lain error[ ] ... affecting substantial rights." Rule 52(b), Fed.R.Crim.P. See United States v. Grosshans, 821 F.2d 1247, 1253 (6th Cir.), cert. denied, 484 U.S. 987 (1987); see also United States v. Chalkias, 971 F.2d 1206, 1212 (6th Cir.) (citing United States v. Meyers, 952 F.2d 914, 917 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992)), cert. denied, 61 U.S.L.W. 3285 (U.S.1992).
 
 
 16
 Plain errors are those that are "so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). "Inappropriate remarks by the prosecutor do not alone justify reversal of a criminal conviction in an otherwise fair proceeding, as long as the jury's ability to judge the evidence fairly remains intact." United States v. Castro, 908 F.2d 85, 89 (6th Cir.1989). Plain error review "is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." United States v. Frady, 456 U.S. 152, 163 n. 14 (1982).
 
 
 17
 In United States v. Leon, 534 F.2d 667 (6th Cir.1976), this court listed the following as factors that must be considered in determining whether a prosecutor's remarks have prevented a criminal defendant from receiving a substantially fair trial:
 
 
 18
 "In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally place before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused." Id. at 679.
 
 
 19
 In the case at bar we are dealing with one sentence in a trial that lasted three days. The remark complained of is clearly "isolated." The government concedes that it was made deliberately, but it was made in the context of a very strong case. The main defense was that Mr. Hermis had been misidentified, but three different federal agents testified that it was Mr. Hermis who paid cash for the food stamps. The illegal transactions took place on two different days and involved different agents. The chance of misidentification appears slim.
 
 
 20
 The passions of the jury are not likely to have been inflamed, moreover, by the interjection of an appeal to let the community know that food stamp fraud will not be tolerated. Appeals for the jury to act as the conscience of the community are not impermissible per se, see United States v. Solivan, 937 F.2d 1146, 1151 (6th Cir.1991), United States v. Alloway, 397 F.2d 105, 113 (6th Cir.1968), and while "[i]t is an error for a prosecutor to direct the jurors' desires to end a social problem toward convicting a particular defendant," Solivan, 937 F.2d at 1153, the social problem dealt with here is simply not the sort of problem that the average juror could be persuaded to think must be solved at any cost. The prosecutor's remark may have been objectionable, but it did not constitute plain error.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The Honorble Max Rosenn, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation